**In the Matter of VENICE WESTERN MOTEL, LTD., d/b/a Venice Resort, Inc., Debtor.**

**VENICE WESTERN MOTEL, LTD., d/b/a Venice Resort, Inc., Plaintiff,**

**v.**

**VENICE MOTOR INN, LTD, a Florida limited partnership, and Martin Rauch, as general partner of Venice Motor Inn, Ltd., Defendant.**

**Bankruptcy No. 86–2452.
Adv. No. 86–350.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 2, 1986.

S. Thomas Padgett, Tampa, Fla., for plaintiff.

Harley Riedel, Tampa, Fla., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Complaint filed by Venice Western Motel, Ltd., d/b/a Venice Resort, Inc. (Debtor), the entity involved in the above-captioned adversary proceeding. The Complaint filed by the Debtor asserts two distinct claims against the Defendants, Venice Motor Inn, Ltd. (VMI) and Martin Rauch, the general partner of VMI.

In Count I of the Complaint the Debtor alleges that the Defendants are the recipients of a transfer which is fraudulent, thus voidable pursuant to § 548(a)(2)(A), (B)(i) of the Bankruptcy Code.

The claim of the Debtor set forth in Count II of the Complaint is based on an allegation of common law fraud, and also claims an unilateral mistake. The relief sought in this Count is not a money judgment for damages, but is based on the claim of a right to recision of the Modification Agreement of a previously executed note and mortgage by the Debtor, encumbering the one and only asset of this Debt-

or, a Best Western Motel located in Venice, Fla.

The matter presently under consideration is a Motion for Summary Judgment filed by the Defendants, who contend that there are no genuine issues of material facts and the controversy can be resolved as a matter of law in favor of the Defendants. The Court heard argument of counsel and considered the record which includes depositions and the affidavits filed in support of and in opposition to the Motion. The facts, which are without dispute, are as follows:

Mr. Rauch, one of the Defendants involved in this adversary proceeding, is an attorney by profession and is the general partner of VMI, an entity which owned and operated a Motor Inn involved in this case under a franchise from Best Western Motels. On December 30, 1983, the Debtor entered into an agreement to purchase the motel from VMI for $4,250,000. The transaction involved a $187,500 cash down payment in addition to the $10,000 paid earlier by the Debtor when the contract was signed. The balance of the purchase price was represented by the execution of a wrap-around mortgage and a security agreement in favor of VMI. The principal amount of the obligation secured by the mortgage and the security agreement was in the amount of $3,937,500, and was to be paid in lump sum payments within one year of the date of the execution of the note and mortgage. In addition, the Debtor was required to pay on the first day of each month monthly interest at the rate of 11% on the outstanding principal.

The mortgage note executed by the Debtor further provided for a 10 day grace period, and called for an imposition of late charges in the event the default was not cured after the expiration of the grace period. The mortgage note also provided that in the event of a default, VMI has the right to accelerate the note and charge a default interest rate of 18% per annum. The mortgage note was, in fact, a balloon note payable on demand on the tenth anniversary of the execution of the wrap-around mortgage and note.

It appears that the Debtor initially performed pursuant to the terms of the mortgage note. However, beginning the summer of 1985 the Debtor defaulted on its obligations in several respects. First, it tendered the interest payment for the month of August to VMI but the check in the amount of $33,229.17 was dishonored by the drawee bank for lack of sufficient funds. While it is true that the check was ultimately made good on October 21, 1985, the Debtor was also in default on several equipment leases, all of which were assumed by the Debtor as part of the acquisition and pledged as additional collateral of VMI. The equipment was replaced without the consent of VMI. Based on the foregoing, Mr. Rauch sent a letter on October 17, 1985 to the principal of the Debtor, Mr. Harris, and notified him that he considered the mortgage obligation of the Debtor to be in default and put him on notice that he invoked the default provisions of the original mortgage note which included the imposition of the default rate of interest of 18% per annum on the obligation. In addition, Mr. Rauch stated that he intended to accelerate the unpaid principal balance of the indebtedness pursuant to ¶ 13(c) of the purchase money wrap-around mortgage executed on December 30, 1983.

Thereafter, Mr. Rauch and Mr. Harris met several times. These meetings culminated in a conference held on December 5, 1985. The conference was attended by both Mr. Rauch and Mr. Harris and their counsel. The conference was concluded by the execution of the document entitled "Mortgage and Note Modification Agreement," the validity of which is the heart of this controversy. The document was signed by Mr. Harris on behalf of the Debtor and by Mr. Rauch on behalf of VMI. The Mortgage Modification Agreement recited that the aggregate balance remaining unpaid under the mortgage was, as of December 5, 1986, $3,703,754.16; that the obligation shall bear 11% per annum interest for the balance of the year, that is, until December 31, 1985; thereafter 15% per annum; that the first payment shall become

due on February 1, 1986, and the first day of each month thereafter. The Modification Agreement provided a new maturity date of the obligation and fixed the same to be December 1, 1987.

According to the Debtor, the Modification Agreement is unenforceable against the Debtor for the following reasons: First, it is contended by the Debtor that the execution of the Modification Agreement, which increased the indebtedness of the Debtor to $3,703,754.16, is a fraudulent transfer, thus voidable under § 548(a)(2)(A), (B)(i) of the Bankruptcy Code (Count I); or in the alternative, the Debtor is entitled to rescind the Modification Agreement based on common law fraud, or unilateral mistake under local law (Count II).

VMI points out that before the Debtor could set aside the Modification Agreement as a fraudulent transfer voidable under § 548 of the Bankruptcy Code, it must establish there was a transfer and most importantly, it must also establish that at the time the transfer occurred the Debtor was insolvent.

In support of its Motion, VMI urges that the execution of the Modification Agreement was not a transfer, but was nothing more than a rewriting of a previous properly executed mortgage, and if there was a transfer, the transfer occurred at the time of the execution of the original mortgage note dated December 30, 1983. This contention of VMI is without merit. The term "transfer" is defined by § 101(50) (1986) of the Bankruptcy Code in the broadest possible terms. The term includes "... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or any interest in property, including retention of title as a security interest and the foreclosure of a Debtor's equity or redemption."

■ There is hardly any doubt that the net effect of the Modification Agreement was to restructure a mortgage and to increase the amount of the principal debt of the Debtor secured by the mortgage. The increase of the principal clearly reduced the Debtor's interest in the subject property, and therefore, under the broad definition of transfer, the execution of this Modification Agreement was, in fact, a transfer to the extent of the increase in the principal indebtedness.

■ However, this conclusion doesn't really furnish any solace, especially a satisfactory answer to the dilemma of the Debtor. This is so because it is clear, and this record leaves no doubt, that at the time the Modification Agreement was executed, the Debtor was solvent. As noted earlier, the original purchase price of the property was $4,125,000. The summary of assets and liabilities filed by the Debtor with its schedules indicates total assets of $5,861,445.51 and total liabilities of $3,884,650.55. The Debtor, in its Motion for Rehearing, addressed to an order of this Court which lifted the automatic stay, repeatedly stated that the motel property of the Debtor represents a substantial equity which should serve as adequate protection of the interest of VMI.

In addition, Mr. Harris also stated in his deposition that the property has value in excess of $1,000,000 over and above the debt secured by the mortgage. Based on the foregoing, there is nothing in this record to indicate that at the time relevant this Debtor was insolvent. Since insolvency is an indispensable element to prevail on the theory of fraudulent transfer pursuant to § 548(a)(2)(A), (B)(i), the claim asserted by the Debtor in Count I must be rejected.

■ This leaves for consideration the claim of the Debtor set forth in Count II of its Complaint. This claim is based on the proposition that the Modification Agreement was obtained by VMI through false representations by Mr. Rauch, which were material and which induced Mr. Harris to enter into the Modification Agreement on behalf of the Debtor. The alleged false statements were a statement by Mr. Rauch to the effect that unless the debt is restructured the Debtor will lose its property because a foreclosure action will be filed, and

a receiver would be appointed within three days, which would in turn remove Mr. Harris from management and control of the affairs of the Debtor.

The proposition urged by the Debtor is basically simple and needs no close analysis. First, the statements allegedly made by Mr. Rauch did not relate to any past existing facts, which is ordinarily the only basis to establish an actionable claim based on fraud. The statements made by Mr. Rauch were mere threats relating to some actions to be taken in the future. For this reason, they could not possibly satisfy the burden placed on the Debtor to establish an indispensable element of an actionable fraud.

Second, Mr. Harris had no right to take at face value any claims asserted by Mr. Rauch and place any reliance on same. Obviously, there was no special confidential relationship between Mr. Rauch and Mr. Harris which entitled Mr. Harris to rely on anything Mr. Rauch stated or had any right to place any trust in Mr. Rauch. They were in adversary positions from the beginning, especially since October 17, 1983 after Mr. Rauch invoked the default provisions of the contract. Mr. Harris had an absolute obligation to assure that the Debtor's interest be fully protected, not only by seeking legal advice, which by the way was available, but also to demand a full documentation of the alleged defaults asserted by Mr. Rauch, defaults which he now claims did not exist at the time he executed the Modification Agreement.

Mr. Harris is a sophisticated businessman who has been engaged in various and sundry business ventures. Mr. Harris was involved in at least seven syndications of motel properties. He had his attorney with him at the December 5 conference and was present at the execution of the Modification Agreement. Mr. Harris' attorney, in fact, witnessed the Modification Agreement, and Mr. Harris certainly had ample opportunity to resist the demands of Mr. Rauch to investigate the validity of threats made by Mr. Rauch concerning Mr. Rauch's ability to obtain appointment of a receiver on such short notice, and to obtain the property through foreclosure in the time frame indicated. There is nothing in this record which would warrant the conclusion that this was not an arm's length transaction between the two sophisticated well-advised business people. Neither is there any evidence in this record to establish overreaching or coercion thus, the relief sought in Count II by the Debtor cannot be granted on this legal theory.

The Debtor contends, in the alternative, that it is entitled to rescind the Modification Agreement based on the theory of unilateral mistake. It is true that at times rescission of contracts is granted on general principles of equity for unilateral mistake. However, there is a long line of cases decided by the courts of this State which stand for the proposition that equity will not grant relief by way of rescission on the grounds of mistake where the mistake complained of results from lack of that degree of care and diligence which would be exercised by persons of reasonable prudence under the same circumstances. *9 Fla.Jur.2d Cancellation § 31*, and cases cited therein.

In the present situation Mr. Harris had ample opportunity to conduct a thorough investigation between the time he received the October 17, 1985 letter notifying him of the acceleration of the mortgage and the time the Debtor entered into the Modification Agreement.

Based on the foregoing, it is clear that the Debtor cannot obtain a rescission under either legal theory. This being the case, this Court is satisfied that since there are no genuine issues of material fact and VMI is entitled to a judgment as a matter of law, the Debtor's Complaint should be dismissed.

A separate final judgment will be entered in accordance with the foregoing.